**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY COBBS, | : | CIVIL NO. **3:05-CV-1966** |
| | : | |
| Petitioner | : | (Judge Conaboy) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| JAMES WYNDER, Warden, | : | |
| PA STATE ATTORNEY GENERAL, | : | |
| | : | |
| Respondents | : | |

**REPORT AND RECOMMENDATION**

This is a 28 U.S.C. § 2254 habeas corpus petition. The petitioner is Anthony Cobbs. He was convicted by a jury in the Court of Common Pleas of York County of robbery and criminal conspiracy to commit robbery on March 3, 2003. He claims in his habeas corpus petition that in the course of the trial a violation of his Sixth Amendment right to confrontation of an adverse witness was violated when his attorney's cross- examination of an alleged co-conspirator and co-perpetrator was interrupted by the trial judge.

A state prisoner must exhaust available state remedies before filing a petition for habeas corpus in federal court.

28 U.S.C. § 2254(b) and (c).  This requirement serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("Comity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.").  "The exhaustion rule also serves the secondary purpose of facilitating the creation of a complete factual record to aid the federal courts in their review."  *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995).

A habeas corpus petitioner bears the burden of demonstrating that he has exhausted state remedies.  *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).  In order to exhaust state remedies for federal habeas corpus purposes, a petitioner must show that he has fairly presented his claim to the state courts.  *Picard v. Connor*, 404 U.S. 270, 278 (1971).  To be fairly presented to the state courts both the legal theory and the facts supporting the claim must have been presented to the state courts.  *O'Halloran, supra*, 835 F.2d at 508.  Further, "state prisoners must give the state courts one full opportunity to resolve any constitutional

2

issues by invoking one complete round of the State's established appellate review process." *O'Sullivan, supra*, 526 U.S. at 845. In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and "unavailable" for purposes of exhausting state court remedies under § 2254(c). *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004).

In this case, the present Sixth Amendment confrontation claim was presented to and decided by the Pennsylvania Superior Court in an unpublished opinion and presented to the Pennsylvania Supreme Court in a procedurally correct manner. Contrary to the respondents contentions, the fact that the petitioner did not pursue the same claim in a PCRA petition is of no relevance to the exhaustion issue. We will accordingly turn to the merits of the claim.

As noted, the petitioner was on trial for robbery and criminal conspiracy. The witness in question, Lawrence Storm, testified at the petitioner's trial (Doc. 13, pp. 67-79) that petitioner Cobbs had come to Storm's home and had asked Storm

3

whether Storm had any money. Storm had said no. Cobbs said to Storm, "well, let's get some money". Cobbs said that they would get money by robbing somebody, that the people that they would rob were in a hotel and that Cobbs would call them to be sure that they were there. Cobbs called. The people were there. Cobbs said to Storm, "Come on." Cobbs asked Storm to bring a gun, and Storm did bring a gun. The two men got in the car and went to the hotel in New Cumberland, Pennsylvania and robbed the people there. The plan was to go in to the room and to rob the people there. The plan was basically Cobbs' plan. When they arrived, the two occupants of the hotel room, a man and a woman, were arguing. As had been agreed between Cobbs and Storm, Storm pulled out the gun. Storm told the man to get on the floor, and the man complied. Cobbs took money from the pockets of the man. Cobbs also took drugs that were there on the table. Later, Cobbs gave some of the money (two or three $20 bills) to Storm.

On direct examination by the prosecution, Storm acknowledged that he had agreed to provide truthful testimony in Cobbs' trial and that in return the prosecution had agreed that a sentence to be imposed would be imposed to run concurrently with a sentence

expected to be imposed in Dauphin County in a case involving charges against Storm then pending in Dauphin County.

On cross-examination, Storm acknowledged that contrary to his direct examination testimony he too had taken money from the victim's pockets.  He acknowledged, after an objection to the question had been overruled, that he stood charged in Dauphin County with an offense of aggravated assault against a police officer.  Counsel's next question was whether it was alleged in Dauphin County that Storm had attempted to shoot a police officer. Storm answered, "Yes."  Counsel asked, "Did, in fact .. Was that gun involved in that, the very gun that was used in the robbery here?"  The Court interceded, stating, "Let's stop, counsel. Let's move on.  That goes to the substantive issues which are underlying that are being proffered in this case."  In the completion of the cross-examination of Storm, counsel did not ask any more questions about the representations or promises made to Storm by the prosecution or about his Dauphin County charges.  The petitioner's claim of a violation of his Sixth Amendment right to cross-examination is based upon this intercession by the trial court.

> 28 U.S.C. § 2254(d) provides:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Superior Court, applying state evidentiary law, found no error in the trial court's refusal to permit the cross-examination to go beyond the fact of pending criminal charges against the witness, relevant as to the possibility of bias, to the subject matter of the nature of the conduct involved in the crimes charges against the witness. Doc. 21, pp. 254a, at 258a-260a. This court must determine whether the decision of the Superior Court was not a ruling that was an unreasonable application of federal law or that involved an unreasonable determination of the facts.

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as

6

> well as federal criminal proceedings, *Pointer v. Texas*, 380
> U.S. 400 (1965), "means more than being allowed to confront
> the witness physically." *David v. Alaska*, 415 U.S., at 315.
> Indeed, "[t]he main and essential purpose of confrontation is
> *to secure for the opponent the opportunity of cross-
> examination.*'" *Id.*, at 315-316 (quoting 5 J. Wigmore,
> Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in
> original).  Of particular relevance here, "[w]e have
> recognized that the exposure of a witness' motivation in
> testifying is a proper and important function of the
> constitutionally protected right of cross-examination."
> *Davis, supra*, at 316-317 (citing *Greene v. McElroy*, 360 U.S.
> 474, 496 (1959)).  It does not follow, of course, that the
> Confrontation Clause of the Sixth Amendment prevents a trial
> judge from imposing any limits on defense counsel's inquiry
> into the potential bias of a prosecution witness.  On the
> contrary, trial judges retain wide latitude insofar as the
> Confrontation Clause is concerned to impose reasonable limits
> on such cross-examination based on concerns about, among
> other things, harassment, prejudice, confusion of the issues,
> the witness' safety, or interrogation that is repetitive or
> only marginally relevant.  And as we observed earlier this
> Term, "the Confrontation Clause guarantees an *opportunity* for
> effective cross-examination, not cross-examination that is
> effective in whatever way, and to whatever extent, the
> defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20
> (1985) *(per curiam)* (emphasis in original).

*Delaware v. Van Arsdall,* 475 U.S. 673, 678-9 (1985).

There is not presented a basis to suppose as the petitioner urges that there was any broader scope of judicial limitation upon the cross-examination of the witness, Storm, than the refusal of a trial judge to permit a question about whether the witness had used the same gun in this robbery as he had used in another

7

charged offense. Although the trial court's admonition ("Let's stop, counsel. Let's move on.") indicates that questioning in a certain vein was being prohibited, and that not just the pending question was being prohibited, it is clear enough that the prohibited vein was questions going to what Storm had done in incidents underlying yet-to-be-tried charges. It would be unreasonable to infer that counsel was not permitted to explore in adequate detail any bias or distortion that might have been present on Storm's part because Storm saw a prospect of a reduction in the severity of the sentence that he would receive or in the overall length of time that he would serve. The trial judge's ruling occurred when counsel attempted to solicit a statement from the witness that would have inculpatory evidentiary value to the prosecution in another criminal proceeding.

   The trial judge had overruled the prosecution's objection to cross-examination of Storm about the other county's (Dauphin County's) pending charges against Storm and expectations that Storm had about the worth of his testimony against the petitioner as a factor to reduce his exposure to punishment in Dauphin County. Doc. 13, pp. 76-77. There is no indication that the trial court would not have permitted additional questioning

8

addressing those charges and Storm's expectations.  However, counsel's questions sought to elicit incriminating testimony from the witness.  Counsel could have effectively impeached the witness and established a basis for arguing the witness' bias to the jury without eliciting incriminating statements from the witness as to a criminal incident not otherwise relevant to the trial of the petitioner.

By application of Section 2254(d), the petitioner is not entitled to habeas corpus relief unless the judge's ruling resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law.  The trial judge's evidentiary ruling here did not violate clearly established federal law.

It is recommended that the petition be denied.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:   February 8, 2006.

9